Rochester *v.* Barnes.

Ordered accordingly.

[MONROE GENERAL TERM, March 1, 1858. *Johnson, Smith* and *Welles,* Justices.

## ROCHESTER and others *vs.* BARNES and others.

The act of May 13, 1845, "in relation to the contracts of rail road companies," had no application to rail road corporations formed under the general rail road acts of 1848 and 1850.

Accordingly, where a rail road company, created under the provisions of the general rail road act of 1848, contracted a debt, for cars, in 1853, *it was held* that the directors of the company could not be made personally liable for the debt, on the ground that the same was contracted by the agency, or with the assent, of the defendants, when the company had not available means for its payment.

The constitution of 1846 plainly designed to abolish the former mode, or system, of creating corporations, and to adopt an entire new system, under which, by general and uniform rules, the individual liability of corporators, for all debts of their respective corporations, should be regulated and prescribed.

And the legislature, in passing the acts of 1848 and 1850, intended to carry out this intention of the constitution, and by those acts to prescribe the *only* rule which should govern, as to corporations formed under them, and the individual liability of their respective corporators.

If the act of 1845 was not wholly repealed, by the acts of 1848 and 1850, its application and operation were, by plain and necessary implication, restricted and limited to corporations previously existing.

APPEAL from a judgment entered at a special ierm, upon the report of a referee. The action was brought to charge the defendants, who were directors of the Sacket's Harbor and Ellisburgh Rail Road Company, with a debt contracted by that company, for the purchase of rail road cars; on the

ground that the debt was contracted by the agency, or with the assent, of the defendants, when the company had not available means for its payment. The action is founded upon the provisions of the act in relation to the contracts of rail road companies, passed May 13, 1845. (*Laws of* 1845, *p.* 251.) (*a*) The cause was referred to Judge Gardiner, and tried before him in Feb. 1857. The referee decided that the defendants were liable for the debt, and ordered judgment accordingly. It appeared on the trial that the Sacket's Harbor and Ellisburgh Rail Road Company was incorporated on the 5th of March, 1849, under the general act authorizing the incorporation of rail road companies, passed in 1848. The defendants, with others, were directors of the company in 1853. In August, 1853, the company, through its directors, made a contract with Dutton, Rowe & Co. of Rochester, for the purchase of thirty cars for the use of the road, the price of which amounted in the aggregate to $17,000. The cars were soon after delivered, and the company gave its notes for the amount, payable in four, eight and twelve months. The plaintiffs claimed to be assignees of the demand. The copartnership of Dutton, Rowe & Co. was dissolved in September, 1854, and on the 18th April, 1855, Dutton, one of the firm and in the name of the firm, executed an assignment to the plaintiffs of the demand against the company, as well as the demand against the defendants arising upon the statute before referred to. The plaintiffs gave evidence on the trial tending to prove that at the time this debt was contracted the company had not avail-

(*a*) That act was as follows : " No debt or debts shall be contracted or incurred by or on behalf of any incorporated rail road company, beyond or exceeding its available means in its possession, under its control, and belonging to it, including its *bona fide* and available stock subscriptions, and exclusive of its real estate, at the time the same shall be contracted or incurred, to pay and discharge the same and all its debts previously contracted or incurred; and every officer, agent or stockholder of said company who shall knowingly assent to, or have any agency in contracting or incurring any debt, in violation of the provisions of this section, shall be personally and individually liable to pay such debt; and shall also be liable to arrest and imprisonment in any action for the same," &c.

able means to pay this debt, and the debts of the company previously contracted; and tending to prove, also, that the defendants, severally, assented to the contracting of the debt. Upon the last point the plaintiffs produced and proved a resolution of the board of directors, taken from the book of minutes, authorizing the treasurer to give the notes of the company for the price of the cars, payable at the several periods above mentioned. This resolution appeared to have been passed at a meeting of the directors held on the 17th of August, 1853.

The defendants appealed to the general term.

*S. Mathews* and *P. Gridley,* for the appellants.

*Benedict & Martindale,* for the respondent.

*By the Court,* JOHNSON, J. The important question upon the merits, in this case, is whether the act of 1845, (*Sess. Laws of* 1845, *p.* 257,) under which this action is brought, was, before its express repeal in 1854, applicable to corporations formed under the general rail road acts of 1848 and 1850.

The corporation, of which the defendants were officers and stockholders, was created under the provisions of the general rail road act of 1848, (*Sess. Laws of* 1848, *p.* 221,) and the indebtedness, for which this action is brought, was contracted in August, 1853. The referee who tried the action held that the acts of 1848 and 1850 did not repeal, or in any respect limit the operation of the act of 1845, but that the latter act remained in full force until its express repeal in 1854, and was applicable to the corporation in question, and to the defendants as officers, agents and stockholders thereof. If the learned referee, whose opinions are certainly entitled to great respect and consideration, is right in this, the judgment is, I think, correct, and should be affirmed.

But after a careful and deliberate examination of all these statutes and of the authorities, I have come to the conclusion

that the act of 1845 has no application to rail road corpora-
tions, formed under the general statutes, since the adoption
of the present constitution.    There may, perhaps, be some
difficulty in establishing the proposition that the act of 1845
was repealed entirely, by implication, by the act of 1848, upon
the ground that the two acts are so utterly repugnant that
both cannot possibly stand for any purpose.    Nor is it neces-
sary to go this length.    It is enough if it can be shown, sat-
isfactorily, that it was intended that corporations created under
these general statutes, and the stockholders therein, should be
governed and rendered individually liable, by such statutes
exclusively, and not by acts for the regulation of corporations
previously existing, and differently created, and the payment
and security of their indebtedness.

It appears perfectly clear and certain, to my mind, that it
became not only the duty, under the constitution of 1846, but
that it was the design and intention of the legislature, in
enacting the statutes of 1848 and of 1850, to prescribe the
only rule which should govern, on the subject of the individual
liability of corporators of corporations formed under the pro-
visions of those acts.    And that consequently, if the act of
1845 was not wholly repealed, its application and operation
were, by plain and necessary implication, restricted and lim-
ited to corporations previously existing.    It was in effect
repealed, as to corporations formed under the general law.
This will be rendered quite apparent, I think, by reference to
the provisions of the constitution of 1846, and of the two acts
referred to.    The constitution plainly designed to abolish the
former mode, or system, of creating corporations, and to adopt
an entire new system, under which, by general and uniform
rules, the individual liability of corporators, for all debts of
their respective corporations, should be regulated and pre-
scribed.    Hence article 8 of the constitution provides, that
" corporations may be formed under general laws, but shall
not be created by special act," except in certain specified cases.
And by section 2 of this article it is provided, that " dues

Rochester *v.* Barnes.

from corporations shall be secured by such individual liability of the corporators, and other means as may be prescribed by law." Thus it will be seen that the whole subject of the act of 1845 is embraced in the provisions of the organic law, and a positive duty in reference to it enjoined upon the legislature. It evidently contemplates, and in effect directs, an entire revision of the laws, on the subject of the creation of corporations, and of the individual liability of stockholders for the dues of such corporations. It was in the discharge of this duty that the statutes of 1848 and of 1850 were enacted by the legislature. These acts create, and establish a new, entire and independent system, for the formation, action and government of the corporations formed under them. They confer and prescribe the powers such corporations shall possess and exercise, and the liabilities and forfeitures to which they shall be subject, and declare under what circumstances, and to what extent, stockholders therein shall be individually liable for all dues of such corporation, and for all labor and services performed for it, or upon its property. Under these circumstances, the fair and reasonable inference is, that the legislature intended to prescribe the only rule which should govern, as to these corporations, and the individual liability of their respective corporators. But this will appear still more clear and decisive, by referring to the language of these acts.

Section 12 of the act of 1848 declares that " all the stockholders of any such company that shall be *hereafter incorporated under this act,* shall be severally individually liable, to the creditors of such company," and prescribes under what circumstances, and to what extent, they shall be so liable. In like manner section 10 of the act of 1850 confines the individual liability of the stockholder to the creditors of the company, when it attaches to " the stockholders of any company formed under this act." The referee in his opinion treats these acts as though they had only made stockholders liable personally to workmen and employees of the company. It will be seen, however, that the provisions are much more extensive, and

embrace all debts and dues, of every description, contracted by the company. As a general rule, I think, when the legislature pass a particular act, and declare under what circumstances, and in what manner, and to what extent individuals shall be liable under that act, the intendment is, that they are liable under those provisions only, and do not fall within the provisions of former general acts. So subsequent general acts, although their language is sufficiently broad and comprehensive for such purpose, will not control the provisions of prior special statutes, unless the legislature so intended. (*Williams* v. *Pritchard*, 4 *D. & E.* 2. *Dwarris*, 514.) The individual liability of stockholders, imposed by these acts, is not made applicable, at all, to corporations then existing. Section 49 of the act of 1850 makes several sections of the act applicable to all existing rail road corporations, but does not make sections 10 and 12, which relate to the subject of individual liability, so applicable; showing, as it seems to me, still more conclusively, the intention to make the individual liability provided for, apply exclusively to the new system, and to be the only rule of liability. Had these sections been made applicable to all rail road corporations then existing, I should have regarded the intent to repeal the act of 1845 entirely, as perfectly clear; especially when considered in connection with the constitutional provision before referred to.

Again; the grants of power in the acts of 1848 and 1850, are entirely inconsistent with, and repugnant to, the act of 1845. In addition to the general powers conferred upon corporations by title 3, chapter 18 of the first part of the revised statutes, the express power is conferred upon all corporations formed under these acts, to borrow money from time to time as may be necessary, for the purpose of constructing the road and operating it afterwards, without any of the restrictions, or any of the pains and penalties, prescribed in the act of 1845. (*Act of* 1848, § 19, *sub.* 10. *Act of* 1850, § 28, *sub.* 10.) Here is a general power granted to these corporations to contract debts by borrowing money upon their obligations respectively,

for the purpose of completing their tracks and fixtures, and purchasing all the stock and materials necessary for their equipment and operation.   This necessarily includes the power to turn out their obligations directly to contractors who construct the roads, and to the manufacturers of engines and cars, who are willing to receive them in payment.   To hold the contrary would be mere trifling with the enactments of the legislature.   It would be absurd to suppose the legislature intended to compel such corporations to go through the process of borrowing money, and paying that only, in the construction of their roads and the purchase of their stock, if they could use their obligations directly for the same purpose, and to the same advantage.   Such a distinction would be one of form merely, without sense or substance.   It is true that the total or partial repeal of statutes, by implication, is not favored by courts. But it is also true that the doctrine of repeal by implication is as well settled and as firmly established as any known to the law.   Mr. Sedgwick, in his recent valuable treatise on *statute and constitutional law*, states the rule very clearly as follows : " A subsequent statute which is clearly repugnant to a prior one, necessarily repeals the former, although it do not do so in terms ; and even if the subsequent statute be not repugnant in all its provisions to a prior one ; yet if the later statute was clearly intended to prescribe the only rule which should govern, in the case provided for, it repeals the original act." (*Sedg. on Stat. and Const. Law*, 124.)   This rule is founded in good sense, and is not without the sanction of authority. (*Davis* v. *Fairbairn*, 3 *How.* 636. *Dexter and Limerick Plank Road Co.* v. *Allen*, 16 *Barb.* 15.) In *Pierce* v. *Delamater*, (1 *Comst.* 17,) it was held by the court of appeals that the abrogation of the constitution of 1821, and the adoption of the present constitution, repealed the statute which forbade the judge of any appellate court taking part in the decision of any cause which had been determined by him while sitting as a judge of any other court.   (2 *R. S.* 275, § 3.) It has also been held, that a statute is impliedly repealed, by

a subsequent statute revising the whole subject matter of the first. (*Bartlett* v. *King*, 12 *Mass. Rep.* 537.) *Nichols* v. *Squire*, 5 *Pick.* 168.) The same rule also prevails where a statute revises the common law.

Applying these general principles to the case before us, I can entertain no doubt that the act of 1845 under which this action has been brought, was never operative against the corporation of which these defendants were stockholders, and officers, and imposed no obligations upon them, personally, to the plaintiffs or their assignors. The fact that the act of 1845 was expressly repealed by the legislature, in 1854, after the debt in question was contracted, furnishes, in my judgment, no argument in favor of the plaintiff's claim, and no evidence that such act was regarded by the legislature, even as being in force against corporations, and stockholders of corporations, under the general law. It may have been in force for some purposes as against prior corporations, and it may have been repealed expressly, for more abundant caution. Had the act of 1845 been in force against this corporation when the indebtedness in question was contracted, it is quite clear that its subsequent repeal would have formed no bar to the plaintiff's right of action. In that case the law would have imposed the obligation to pay upon the defendants, the moment the debt was contracted. It would have become their contract, and their obligation, immediately, by force of the statute. It would have been in no sense an inchoate obligation, but a complete and perfect one, to all intents and purposes, and the repeal of the statute afterwards could not have impaired it. But as the act was of no force against the defendants, no cause of action is established against them. The judgment must therefore be reversed and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, March 1, 1858. *Welles, Johnson* and *Smith,* Justices.]