THE PEOPLE OF THE STATE OF NEW YORK ex rel. HEZEKIAH STURGES and WILSON T. BASSETT, Appellants, v. G. POMEROY KEESE and DAVID A. AVERY, Respondents.

*Religious corporation — Episcopal churches —* 1868, *chap.* 808, *only applicable to such existing corporations as adopted it — chartered rights, whether acquired under a general or special law, cannot be impaired — who are entitled to vote under chap.* 79 *of* 1801 — *chap.* 195 *of* 1813.

Chapter 808 of 1868, amending the acts relating to churches in connection with the Protestant Episcopal Church, and prescribing and altering the qualifications of the electors therein, was not intended to apply to any then existing corporations, whether created by a special charter or formed under the general act, unless the vestry thereof should determine to adopt the same as provided in the second section of said chapter.

*It seems,* that if it had been made to apply to such corporations, it would have been void as to all those formed prior to the adoption of the Revised Statutes, as violating the obligation of contracts.

The rights and franchises of a private corporation organized under a general law are as inviolable as the rights and franchises of a corporation organized under a special charter.

The word "belonged," used in section 1 of chapter 79 of 1801, and section 1 of chapter 195 of 1813, prescribing that the electors of Episcopal churches shall consist, among others, "of all who shall have belonged to such church or congregation for the last twelve months preceding such election," is incapable of an exact, inflexible definition. Whether the person whose right to vote is questioned belongs to the church or congregation, within the meaning of the statute, is and must remain principally a question of fact, though doubtless a mixed question of law and fact.

The right of particular individual voters to vote, considered and passed upon.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

The action was in the nature of a *quo warranto* to oust the defendants from the office of wardens of Christ Church, in Cooperstown.

The case was tried before Mr. Justice FOLLETT, who, upon directing the complaint to be dismissed, delivered the following opinion:

FOLLETT, J.:

Prior to the act of April 4, 1784, the religious corporations of the Colony and State of New York were organized under special charters. At this date a general act was passed which provided for the incorporation of such corporations, the ninth section of which prescribed the qualifications entitling persons to vote at elections. (1 Jones & Varick, 104; 1 Greenl., 71.)

This act not being satisfactory to the Episcopal church in this State, an act, entitled "An act for the relief of the Protestant Episcopal Church, in the State of New York," was passed March 17, 1795. (3 Greenl., 188.) The fourth section of this act prescribed the qualifications of voters at elections.

In 1801, all prior statutes relating to religious corporations were revised and became a part of the Revised Laws of that year. A comparison of the previous acts with the Revised Laws, shows that the Revised Laws were a complete revision of the prior statutes relating to religious corporations.

It was provided (chap. 189, vol. 1 [R. L., 1801], p. 619), "that all acts and parts of acts heretofore passed by the legislature of this State, which come within the purview or operation of any of the

acts passed during the present session of the legislature, commonly called the revised acts, shall be and the same are hereby repealed from and after the first day of October next." (October, 1801.) A statute which embraces the whole subject of, and revises former statutes, repeals the statutes revised. (*Rochester* v. *Barnes*, 26 Barb., 657–663; Potter's Dwarris, 157; Sedg. on Stat. and Const. Law [2d ed.], 365.)

Christ Church of Cooperstown was incorporated in 1811. It was conceded on the trial to have been incorporated under the act of 1795. This concession does not express the fact, the act of 1795 having been repealed by the Revised Laws of 1801. Both parties to this action claim to be officers of this corporation, and both are estopped from denying its incorporation.

It is conceded that it was incorporated in 1811 as an Episcopal church, and there being no other statute under which it could have been incorporated, it must have been incorporated under the Revised Laws of 1801. By these laws it was provided (1 R. L. [1801], chap. 79, p. 336), "that it shall be lawful for the male persons of full age, of any church or congregation in communion with the Protestant Episcopal Church in this State, who shall have belonged to such church or congregation for the last twelve months preceding such election, and who shall have been baptized in the Episcopal church, or shall have been received therein, either by the right of confirmation or by receiving the holy communion, or by purchasing or hiring a pew or seat in said church, or by some other joint act of the parties and of the rector, whereby they shall have attached themselves to the Protestant Episcopal Church, and not already incorporated," may organize a religious corporation. "The persons qualified, as aforesaid, shall in every year thereafter, on the day in Easter week so to be fixed for that purpose, elect such church-wardens and vestrymen." By this act the qualifications of persons entitled to vote for church-wardens and vestrymen in the Episcopal church was fixed, except as to religious corporations previously created by special charters or under general laws, and except, of course, such churches as have been incorporated under subsequent laws. In 1813 the laws of this State were again revised pursuant to chapter 195 of that year. (2 R. L. [1813], p. 555.) This revision embraced the whole subject of religious corporations, but no change was made

in the qualifications of voters in Episcopal churches. The language prescribing their qualification is the same in both revisions, except the word " other " preceding the words " joint act of the parties," in the revision of 1801, was omitted in the revision of 1813. It was provided (vol. 2, R. L. [1813], chap. 202, p. 556), that all prior acts within the purview of the Revised Laws of 1813, were repealed from and after December 1, 1813. The section repealing prior laws is an exact copy of the repealing section of the Laws of 1801, above quoted. March 5, 1819 (chap. 33, Laws 1819), a further act relating to the incorporation of Episcopal churches was passed, which, however, in no wise changed the qualifications entitling persons to vote after the formation of the corporation. The first section of this chapter (the only one relating to this subject) was repealed in 1868. (Chap. 803, § 3, Laws 1868.)

The Revised Laws of 1813 were again amended by chapter 47, Laws 1826. The third section of this act is the only one relating to the qualification of voters, and this was declared inapplicable to Protestant Episcopal churches by section 4 of chapter 803, Laws of 1868.

In 1868, the Revised Laws of 1813, so far as they relate to churches in connection with the Protestant Episcopal Church, were again amended.

This act, among other things, provides how Episcopal churches shall thereafter be incorporated. The qualifications of persons entitled to vote upon the question of incorporating churches, is prescribed by subdivision 4 of section 1 :

" 4. The persons entitled to vote at such meeting shall be the male persons of full age belonging to the church or congregation, qualified as follows, and none other :

" *First.* Those who have been baptized in the Protestant Episcopal Church, or who have been received therein, either by the rite of confirmation or by receiving the holy communion, or

" *Second.* Those who have purchased, and for not less than twelve months next prior to such meeting have owned a pew or seat in such church ; or who, during the same period of time, have hired or paid for a pew or seat in such church ; or who, during the whole period aforesaid, have been contributors in money to the support of such church."

The ninth clause of section 1 provides that the male persons qualified as aforesaid, provided they shall also have belonged to such church or congregation for twelve months immediately preceding the annual election, shall elect the wardens and vestrymen. Section 2 of this act provides :

"2. The provisions of the ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth clauses of section one of this act shall apply to any church or corporation in communion with the Protestant Episcopal Church in this State, heretofore incorporated under the act hereby amended, or. under any of the acts amending the same, or under the several acts to provide for the incorporation of religious societies, passed April sixth, seventeen hundred and eighty-four, March twenty-seventh, eighteen hundred and one, or the act for the relief of the Protestant Episcopal Church in the State of New York, passed March seventeenth, seventeen hundred and ninety-five, or by any special charter made or granted before or after July fourth, seventeen hundred and seventy-six, whereof the vestry, at a regular meeting, shall by vote determine to adopt the same."

The vestry of Christ Church has not adopted the provisions of subdivisions 9 to 17, inclusive, of section 1, chapter 803, Laws 1868. Notwithstanding, the relators . contend that subdivisions 4 and 9 are by section 2 made applicable to all corporations organized under general laws without being adopted by the vestry, and that the qualifications of voters contested in this case are to be determined by that act. In support of this construction it is urged that the words "whereof the vestry at a regular meeting shall, by vote, determine to adopt the same," are only applicable to churches incorporated "by any special charter," which term, it is said, is the immediate antecedent of the term "whereof the vestry," etc.

An antecedent is not contained in that part of the sentence commencing with the words "or by any special charter," but it is left to be implied or imported from the preceding lines of the section. The sentences, or parts of sentences, of the section connected by the disjunctive "or," seem to require that "or" be construed as a conjunctive. Had these parts of the sentences been connected by "and" instead of "or" the relators' construction would hardly have been contended for. "And" and "or" are con-

vertible as the sense of the statute may require. (*State* v. *Myers*, 10 Iowa, 448; *Townsend* v. *Read*, 10 C. B. [N. S.], 308; *Boyle* v. *Murphy*, 55 Ill., 236.)

In the quaint language of DODDERIDGE, J., in *Creswick* v. *Rokesby* (2 Bulstrode, 47, 51): "When the sense is the same they are all one, and the words conjunctive and disjunctive are to be taken *promiscue*." (Potter's Dwarris, 286, 291, 292.)

If the construction contended for prevails, the lines between the word "incorporated" and the words "by any special charter," are senseless and surplusage, and the statute should have read: "This act shall apply to any church or corporation in communion with the Protestant Episcopal Church in this State, heretofore incorporated by any special charter," etc. Such a construction would violate the rule that, if possible, effect must be given to every clause, sentence and word of a statute, rejecting none as surplusage unless the part rejected renders the statute senseless. (Sedg. on Stat. and Const. Law [2d ed.], 200, 201.)

It is further urged by the relators, as a reason for believing that their construction expresses the true intent of the legislature, that the legislature was without power to change the qualifications of voters of religious corporations created by special charters, without the assent of the corporations, but had the right to make such changes in the qualifications of voters in religious corporations organized under general laws. This argument is based upon a misapprehension of the law. The rights and franchises of a private corporation organized under a general law are as inviolable as the rights and franchises of a corporation organized under a special charter. (*Miller* v. *The State*, 15 Wall., 478–492; *Hewitt* v. *The Midland Railroad*, 12 Blatch., 452.)

It was settled in the *Dartmouth College case* (4 Wheat., 518) that the charter of a private corporation containing no reservation, or the right to change it, was an irrevocable grant of the franchises given, possessing the nature of property, and that subsequent acts of legislation altering the terms of the charter, increasing its members or changing its conditions, was a law impairing the obligation of a contract and unconstitutional.

This doctrine is applicable to every species of corporation, excepting those owned by the State or established for governmental

purposes, and has been applied to religious corporations. (*Terrett* v. *Taylor*, 9 Cranch, 43 ; *Pawlet* v. *Clark*, Id., 292.)

Religious corporations are not governmental. The national and State constitutions forever separate church and State. The charter of Dartmouth College was to enable Doctor Wheelock to instruct the Indians in the Christian religion and to educate the people.

The application of this doctrine to the property and rights of religious corporations is in conflict with the rule in England and on the continent of Europe, where churches have been disestablished and their property appropriated to secular uses. But where this has been done the church and State are united, and the rights and property of churches are held to be governmental as distinguished from private. In those countries the power of the government is not limited by written constitutions but is omnipotent; and while such governments have usually avoided exercising the power of abridging the rights of private corporations, still their power to do so is unquestioned.

In 1828 the legislature, by the Revised Statutes, reserved to itself the right to repeal and alter the charters of all corporations thereafter granted (1 R. S., 600, § 8), and in 1846 the provision was incorporated into the Constitution. (Art. 8, § 1.) But these provisions are not retroactive and do not affect vested rights. (*Dodge* v. *Woolsey*, 18 How. [U. S.], 331 ; *Jefferson Branch Bank* v. *Skelly*, 1 Black. [U. S.], 436.)

Religious corporations consist of their members who own and, through their trustees, control the property. (*Robertson* v. *Bullions*, 11 N. Y., 243 ; *Gram* v. *Prussia, etc., Society*, 36 id., 161.) The members are persons entitled to vote. A statute introducing a new class of members, or members not possessing the qualifications required by the original charter, would be an impairment of the vested rights of the corporation and its members.

Chapter 803, Laws 1868, does not enlarge or restrict the classes of persons entitled to vote at the elections in Christ Church, nor does it modify the Revised Laws of 1801 in respect to the qualifications of voters in the church, for two reasons : 1. The legislature did not intend by chapter 803, Laws 1868, to introduce a new class of voters, or voters possessing different qualifications, unless the vestry of the church should adopt its provisions. (Hoffman's Ecclesi-

astical Law, 317.) 2. The legislature was without power under the Constitution of the United States to effect such a change without the assent of the corporation, which has never been given.

The qualifications of the persons whose votes are contested must be tested by the Revised Laws of 1801.

By these laws two classes of persons are entitled to vote for wardens and vestrymen : 1. Male persons of full age who have belonged to such church for the last twelve months next preceding such election. 2. Male persons of full age who have belonged to such congregation for the last twelve months next preceding such election.

To entitle persons belonging to the first class to vote they must, in addition to having belonged to the particular church in which the vote is taken for the last twelve months preceding the election, be members of the Protestant Episcopal Church in one of four ways :

1. By having been baptized in the Episcopal church.

2. By having been received in the Episcopal church by the rite of confirmation.

3. By receiving the holy communion.

4. By some other joint act of the parties and of the rector whereby they shall have attached themselves to the Episcopal church.

These qualifications are ecclesiastical. The first three are so on their face and the last is copied from Canon 15 of 1798, which remained the law of the church until 1832. The first three need not have been acquired in the particular church in which the vote is taken. If the persons have become members of the Episcopal church in an ecclesiastical sense, through the action of some church other than the one in which the vote is taken, it is sufficient to give persons of the first class the necessary ecclesiastical qualifications.

The term "the rector," in the fourth qualification, I think refers to the rector of the particular church in which the vote is taken, and is a local qualification.

To entitle persons belonging to the second class to vote they must (in addition to having belonged for the last twelve months preceding the election to the particular congregation in which the vote is taken) have purchased or hired a pew or seat in said church.

In construing this statute it must be borne in mind that it assumes

the existence of an unincorporated church or congregation·in com-
munion with the Protestant Episcopal Church, the persons belonging
to which desire to form a religious corporation. It seems plain that
the period of belonging refers not to the period during which the
person may have belonged to the Episcopal church, but to the period
during which he has belonged to the particular church or congrega-
tion in which the vote is taken; and a person of either class is not
entitled to vote unless he has belonged to the particular church or
congregation in which the vote is taken for one year next preced-
ing the election. ˙The relators insist upon a definition of the term
"belonged   *   *   *   for the last twelve months," which shall
specify the facts constituting belonging and the facts excluding a
person from falling within the term. It is dangerous to lay down
general rules for the determination of questions not before the
court. The questions which may arise and the facts underlying
them cannot be foreseen, and for that reason cannot be wisely dis-
cussed. To illustrate, the definition contended for on the one hand,
that a member of the church loses his right to vote if he ceases to
be a stated attendant and contributor for twelve months preceding
the election, would exclude from the polls the most devoted mem-
ber, regular attendant and contributor who had not changed his
residence or separated from the church, but who by illness and
poverty should become unable to comply with the conditions. This
rule would exclude members who had possessed every qualification
for years, if by reason of illness or business they should voluntarily
absent themselves from the church and their home for a year, even
though without the slightest intention of changing their residence
or severing their connection with the church. Should we attempt
to define the word "belonged" by the term "stated attendance,"
unless confined to actual cases, the facts of which are known, con-
fusion would necessarily ensue; one man might attend many times
and yet not in any sense belong to the church or congregation,
another might attend but few times and still belong. The facts
existing anterior to the twelve months and the circumstances sur-
rounding each particular person must be taken into account. Many
cases may be supposed, but the wit of man is incapable of suppos-
ing or anticipating the variety of questions which may arise turning
upon the definition of the word "belonged." After much reflec-

tion, aided by the briefs of counsel, I am of the opinion that the term is incapable of an exact inflexible definition which will fit the cases that may arise so as to enable it to be said that this man does, and this man does not, "belong" within the meaning of the statute. Whether the contested voter belongs to the church or congregation within the meaning of the statute is, and must remain principally, a question of fact, though doubtless a mixed question of law and fact. Upon this theory this case will be decided without attempting an exact definition of the term. In the case of each person who at some period has unquestionably possessed the right to vote in this church, the statute and the evidence should be so construed as not to disfranchise such person unless it appears by a fair preponderance of evidence that the right has been lost. In such cases the doubt (if any) must be resolved in favor of the continuance of the franchise. This is the legal and charitable rule.

T. E. voted for the defendants. He had been baptized and confirmed in the Episcopal church. His name appears upon the list of communicants of Christ Church, in which he had received the holy communion though not for nearly two years prior to the election. His family attended this church, but he had not more than five or six times during the year. He had neither owned or rented a seat or pew. He had never attached himself to any other church or congregation.

F. P. K. voted for the defendants. He had been baptized and confirmed in the Episcopal church. His name appears upon the list of communicants of Christ Church, in which he had received the holy communion though not within five years preceding the election. He had attended this church at least twenty times within the year, but not regularly since August preceding the election. He had not owned or rented a seat or pew for several years. For two months preceding the election he had attended the Presbyterian church with considerable regularity, and on a few occasions other churches in the village.

R. I. W. voted for the defendants. He had been baptized and confirmed in Christ Church. His name appears upon the list of communicants of this church though he had never received the holy communion. He may have attended the church and joined in the service by the use of the prayer book fifteen times during the

year, but had more frequently attended the Presbyterian church. He had not purchased or hired a pew or seat within five years; and for the last three years when in attendance had not occupied the pew of his father's family. He had occasionally attended other churches in the village.

W. S. B. voted for one of the relators and one of the defendants. He had been baptized and confirmed in Christ Church. His name appears upon the list of communicants of this church, in which he has received the holy communion several times. From December preceding the election, and to about the date of the election, he was absent from Cooperstown attending a medical college. Prior to December, and during the year preceding the election, he attended this church about twice in each month. He had contributed to the support of the church at the Sunday offerings when in attendance. He had occasionally attended other churches. He was selected as one of the inspectors at this particular election. It does not appear whether he had purchased or hired a seat or pew in this church.

L. B. C. voted for the defendants. He had been baptized and confirmed in the Episcopal church. His wife and children had been baptized in the church and his wife confirmed. For three years preceding May, 1877, he attended Christ Church regularly and received the holy communion therein, but had not received the holy communion for two or three years preceding the election. He had contributed to the support of the church at the Sunday offerings when present, and to some of the charitable enterprises of the church. For two years preceding the election he had not attended the church more than ten times, assigning as a reason that he remained at home in charge of the children when his wife attended. He had never purchased or hired a pew or seat in the church, but has occupied a pew hired by another person.

The connection of these persons with the church had never been severed by any act of the church, nor is the evidence sufficient to justify the court in finding that they, or either of them, had severed their connection with the church and thereby lost the franchise which at one time they had clearly possessed. There is more doubt about the right of the last-named person, but the lenient rule

adopted includes him. These persons were all legal voters and their votes must be counted.

W. H. B. voted for the defendants. He had been a resident of the parish since 1873. He had been baptized in the Protestant Episcopal Church, but never had been confirmed or a communicant. Since 1873 he had hired and paid for pew No. 27 in Christ Church, though the rent was in arrear since October, 1879, but whenever rent had been called for it had been paid. Under this arrangement or practice he continued to occupy this pew down to the date of the trial. His family attended church and his children the Sunday school. He had attended the church about twelve times during the year and contributed to the Sunday offerings when present, and also to the expenses of church music. He had never attached himself to or attended any other church within the meaning of the statute. He belonged to the congregation of Christ Church for the year preceding the election. Was a pew holder. Had one ecclesiastical qualification, to wit, baptism, and was entitled to vote and his vote must be counted.

D. A. voted for the defendants. He possessed none of the ecclesiastical qualifications, and never attached himself in any way to the Protestant Episcopal Church. He had not for a year preceding the election purchased or hired a pew or seat in Christ Church. He had attended that church but once during the year, and not more than twelve times in his life. He possessed none of the statutory qualifications of a voter. His vote ought not to have been received and cannot be counted.

J. B. H. voted for the defendants. He had been baptized and confirmed in Christ Church. Never received the holy communion and his name is not entered on the list of communicants. He had rarely attended church and was unable to say that he had attended or contributed to the support of that or of any other church during the year preceding the election. He had never owned a seat or pew in this church. At the time of this election he did not belong to the church or congregation within the meaning of the statute. He had lost his franchise, was not entitled to vote, and his vote cannot be counted.

R. M. T. voted for the defendants. He had been baptized, confirmed in and a communicant of a Protestant Episcopal Church

in one of the towns of the county for many years, to which church he had belonged in every statutory sense. In February preceding the election he removed to Cooperstown, attached himself to Christ Church, in which he received the holy communion, hired a pew and contributed to the support of the church. It is clear that he belonged to Christ Church at the time of the election, but not having belonged for a year preceding the election was not entitled to vote and his vote cannot be counted.

O. N. H. voted for the relators. He possessed none of the ecclesiastical qualifications. For two years preceding the election he rentéd and paid for part of a pew in this church, which was occupied by his wife, who is a member. He thinks he had attended during the two years once or twice, and on some occasion had contributed about a dollar to the support of the church. He was not a member of the congregation, not entitled to vote, and his vote cannot be counted.

T. L. B. voted for the relators. He was baptized in the Protestant Episcopal Church, in Ireland, but had never been confirmed or received the holy communion in any church in communion with the Protestant Episcopal Church in this State. His wife is a member of Christ Church and his children have been baptized therein. He had not paid for a seat or pew in Christ Church, or made any arrangement for having a seat or pew, until after or about the time of the election. He had attended church a few times during the year. He did not possess the ecclesiastical qualification. He had not belonged to the congregation or owned or hired a pew or seat in this church for the year preceding the election; was not a legal voter and his vote cannot be counted.

E. W. F. voted for the relators. He possessed none of the ecclesiastical qualifications. His wife is a member of the church and had occupied a pew paid for by her husband. He thinks he had attended this church once in the last six or seven years. He did not belong to the congregation, was not entitled to vote, and his vote cannot be counted.

T. S. voted for the relators. He possessed none of the ecclesiastical qualifications. He never owned or rented a pew or seat in this church. He had not been absent from service more than twelve times during the three years preceding the election, and

had contributed to the support of the church at the Sunday offerings when present. He clearly belonged to the congregation, but lacking the ecclesiastical qualifications, and not having purchased or hired a seat or pew in the church, was not a legal voter and his vote cannot be counted.

D. L. B. voted for the relators. He had purchased and paid for a pew in this church for many years and had attended once or twice during the year preceding the election. Has no recollection that he has been baptized or confirmed.

The legality of this vote is quite near the line, and it may well be that if the facts had been fully developed he would have been found a legal voter. But assuming that the relations which he sustained to this congregation are fully disclosed by the evidence, I do not think it can be said that he belonged to the congregation during the year preceding the election; was not a legal voter and his vote cannot be counted.

The result arrived at is, that five votes must be deducted from the number received by Sturges and Bassett, leaving seventeen legal votes cast for Bassett and sixteen legal votes cast for Sturges.

Three votes must be deducted from the number received by Keese and Avery, leaving twenty-two legal votes cast for Keese and twenty-one legal votes cast for Avery.

The complaint is dismissed, with costs.

*James A. Lynes*, for the appellants.

*E. M. Harris*, for the respondents.

BY THE COURT:

The decision and opinion of Mr. Justice FOLLETT has the entire concurrence and approval of this court. In his admirable opinion the legislation affecting the case is carefully reviewed. He concludes that the act of 1801 prescribes the qualifications of voters applicable to this church controversy; that the act of 1868 does not apply because it has not been duly accepted so as to make it applicable; that no rule can be formulated in words which can safely be adopted to define the right to vote in respect to individuals, and that each individual's right to vote is a combined question of fact

and law to be separately determined. Upon the facts before him he has decided who were and who were not voters, and has determined that the defendants were duly elected by a majority of the legal votes.

In all these respects this court concurs in the opinion of the learned justice.

The year for which the defendants were declared elected has already expired, and continued litigation, so far as the present case and parties are concerned, is simply a contest over the costs.

The judgment is affirmed, with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.